UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

DAVID Q. GIVHAN,   Movant/Defendant,

v.   Civil Action No. 3:19-cv-700-DJH
Criminal Action No. 3:16-cr-57-DJH

UNITED STATES OF AMERICA,   Respondent/Plaintiff.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Following a weeklong jury trial, Defendant David Q. Givhan was convicted of three counts of interstate transportation for prostitution and one count of sex trafficking. (Docket No. 98) His conviction and sentence—235 months of imprisonment (D.N. 117)—were affirmed on appeal. *United States v. Givhan*, 740 F. App'x 458 (6th Cir. 2018). Givhan now moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (D.N. 173) The Court referred the motion to Magistrate Judge H. Brent Brennenstuhl for report and recommendation. (D.N. 163) Judge Brennenstuhl recommended that Givhan's motion be denied and that no certificate of appealability issue. (D.N. 174) Givhan objected to the magistrate judge's findings and recommendation. (D.N. 184) For the reasons explained below, the Court will overrule the bulk of Givhan's objections, adopt the magistrate judge's recommendation, and deny relief under § 2255.

**I.**

Givhan was convicted of sex trafficking by force, fraud, or coercion with respect to Jane Doe #1 (referred to at trial as Christine) and of transporting Christine, Jane Doe #2 (Shakela),

1

and Jane Doe #3 (Xia) in interstate commerce for purposes of prostitution.[1] (*See* D.N. 98; D.N. 1) A sex-trafficking charge pertaining to Xia was dismissed on the second day of trial after Xia recanted her earlier statements that Givhan had abused her and other women. Because Xia did not recant until after the prosecutor's opening statement, the statement referred to anticipated testimony by Xia. After conferring with Givhan, trial counsel declined to seek a mistrial, instead moving to dismiss the indictment. The Court denied the motion to dismiss, and the case proceeded. Xia testified and was thoroughly cross-examined by Givhan's counsel, who elicited numerous admissions that Xia had lied repeatedly about Givhan's alleged abuse. Givhan was convicted on all remaining counts and now seeks relief under § 2255 on the ground that he received ineffective assistance of counsel. (D.N. 173)

## II.

The Court reviews de novo the portions of the magistrate judge's report and recommendation to which a party objects. *See* 28 U.S.C. § 636(b)(1)(C); *United States v. Winters*, 782 F.3d 289, 295 n.1 (6th Cir. 2015) (quoting § 636(b)(1)(C)). Givhan objects to the report and recommendation on ten grounds, each pertaining to his claims of ineffective assistance of trial counsel. (D.N. 184) To establish ineffective assistance of counsel, Givhan must show (1) that his counsel's performance "fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 688 (1984); and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. As explained below, he fails to make the necessary showing with respect to any of his claims.

---

[1] Consistent with the Court's previous ruling, the victims will be identified by first name only. (*See* D.N. 74)

A.   **Objection 1**

Givhan first objects to the magistrate judge's "findings and conclusions in reference to Claim 1." (D.N. 184, PageID # 2350) He asserts that "contrary to the [magistrate judge's] finding, [he] was no[t] the one that is to be held responsible for not moving for a mistrial." (*Id.*) But the magistrate judge did not state that Givhan was responsible for the decision whether to seek a mistrial; rather, the report and recommendation summarized the proceedings surrounding the discovery that Xia had recanted her previous statements. The record reveals that after learning that Xia had recanted, defense counsel stated:

> We're not going to move for a mistrial. He's in custody. He's detained. He has been detained for a year. In fact, this would be classically an example, Judge, where the Government would profit from a mistrial. He would remain in jail. He would remain in custody. They would, as the Government said, restructure their case. They've heard the defense opening. They know what the defense is. They would then—they would benefit from these lies by Xia [redacted].
>
> In addition, there's no remedy in mistrying this case, none. It benefits the people who have wrongdoing and it hurts Mr. Givhan so we don't want that.
>
> . . . .
>
> [A] mistrial does not benefit us. We would move to dismiss this case. We think it's [an] extraordinary remedy, but it's the only remedy for this extraordinary conduct, and that would be our motion.

(D.N. 140, PageID # 1192, 1194) The Court denied the motion to dismiss, then took a break to allow defense counsel time to discuss the situation with Givhan. (D.N. 135, PageID # 819-21) Defense counsel reported back:

> We have consulted with Mr. Givhan, and we are—we believe, unfortunately, that a mistrial would only benefit the government. We would proceed with trial in front of Your Honor.
>
> . . . .

3

> [Givhan] has to look at all his choices, and a choice of a mistrial, he would likely remain in custody. A second trial, they have heard our opening, they know our defenses.
>
> We believe that given the circumstance that he's in, which he did not create, that his best alternative—obviously, the one we wanted was dismissal, but the best alternative he has in light of the Court's ruling, respectfully, would be to continue with this trial.

(*Id.*, PageID # 822) Upon questioning by the Court, defense counsel repeatedly confirmed that he had consulted with Givhan about the decision not to move for a mistrial. (*Id.*, PageID # 822-23) Nothing in the record, however, suggests that counsel inappropriately delegated that decision to Givhan, and the reasons stated for the decision—that a mistrial would be harmful to Givhan because he would remain in custody and the government had already heard his defense—indicate thoughtful trial strategy. Givhan thus "cannot overcome the 'strong presumption' that h[is] trial counsel's decision not to seek a mistrial 'might be considered sound trial strategy.'" *Delaine v. United States*, 605 F. App'x 468, 472-73 (6th Cir. 2015) (quoting *Strickland*, 466 U.S. at 689); *see also Rayborn v. United States*, 489 F. App'x 871, 878 (6th Cir. 2012) (observing that "[s]trategic decisions made after a thorough investigation of the relevant law and facts are . . . 'virtually unchallengeable'" under *Strickland* (quoting *Strickland*, 466 U.S. at 690)).

To the extent Givhan challenges trial counsel's decision to move for dismissal of the indictment "instead" of seeking a mistrial (D.N. 184, PageID # 2354, 2358-60), his argument fails because the Court explicitly presented a second opportunity to move for a mistrial after it denied the motion to dismiss. (D.N. 135, PageID # 819-20 ("So having just received my ruling, I'm not going to ask for your positions immediately. I'm going to allow you time to consider what your positions are. I want to make sure . . . that [Givhan] has sufficient opportunity to be counseled . . . as to the impact of the Court's ruling on your motion and with respect to whether you wish to revisit your prior positions."); *id.*, PageID # 821 ("When we left on the last break, I

had given the parties my ruling on the motion to dismiss the indictment. I asked you to tell me or to reassess your relative positions on a potential motion for mistrial and to counsel with your client.")) The trial transcript reflects that each time, Givhan's trial counsel concluded—for reasons stated on the record—that a mistrial was not in Givhan's best interest. As Givhan points out, that decision was counsel's to make (*see* D.N. 184, PageID # 2351); nevertheless, they consulted Givhan, who agreed with their advice. (*See* D.N. 135, PageID # 822-23) Givhan fails to show that his counsel's decision not to seek a mistrial was objectively unreasonable. *See Strickland*, 466 U.S. at 688.

Finally, Givhan's suggestion that his counsel's opening statement reflected a lack of preparation or investigation is clearly without merit, as the government learned that Xia had provided false statements only after defense counsel called those statements into question during his opening. Defense counsel began his opening statement by telling the jury that "the Government's case [was] built on falsehoods" (D.N. 139, PageID # 1121), and he continued with that theme. (*Id.* ("This case is based on lies, and the trickery, coercion, and force never happened."); *id.*, PageID # 1122 ("[T]he proof is that these allegations of force and threats are false.")) He then specifically attacked Xia's truthfulness:

> [O]ur evidence is going to show there was no cut with a knife in this first period of time. There was no burning. That may have happened in the past to her but not by David Givhan. There w[ere] no threats. There was no choking. There was no escape.
>
> What I mean by that, ladies and gentlemen, is Xia never met the defendant until 2015, March. This whole web and tale she wove is a lie. She never met him.
>
> Our proof is going to be, no, it's not a misunderstanding, miscommunication, disagreement. No, she never met the man until March 2015. So this story she told about all the horrible things he had done to her never occur[red].

5

(*Id.*, PageID # 1124) As the prosecutor later explained, defense counsel's opening prompted the United States to question Xia about her prior statements:

> after [defense counsel's] opening, I went back during the break and I said [to Xia], this is what he said in opening. Is there any truth to this idea that you were with [Givhan] from March to May but in fact were not with him before and she said yes.

(*Id.*, PageID # 1180) Thus, defense counsel were not, as Givhan asserts, "left to base their decision-making on what they guessed the government's witnesses might testify to."[2] (D.N. 184, PageID # 2357; *see id.*, PageID # 2358-60) On the contrary, defense counsel had information that the government did not, which ultimately resulted in Xia's recanting and the dismissal of Count 5—benefiting Givhan. (*See* D.N. 139, PageID # 1180; D.N. 135, PageID # 818) For all of these reasons, the Court will overrule Givhan's first objection.

**B.     Objection 2**

Givhan next objects to the magistrate judge's treatment of his second claim, which attacks trial counsel's failure to call Givhan's son and brother to testify at trial. (D.N. 184, PageID # 2360) According to Givhan, "[c]ounsel could have shown through the[se] two material witnesses[] that it was impossible that [Givhan] forced, [de]frauded, or coerced Christine into prostitution." (*Id.*, PageID # 2361) Affidavits from Givhan's son and brother are attached to his § 2255 motion. (*See* D.N. 173, PageID # 2193-95) Both state that in 2015, Givhan, his son, and his brother were driving together when Christine began following them, attempting to get Givhan's attention; that when Givhan stopped and got out to talk to her, he

---

[2] As evidence of the purported lack of preparation and investigation, Givhan repeatedly cites defense counsel's statement that in his opening, he would "stick to what [the government was] saying." (D.N. 139, PageID # 1103; *see* D.N. 184, PageID # 2357-60) That statement came at the end of a discussion between the Court and counsel about whether and to what extent Xia's prior prostitution could be mentioned during the parties' openings. (*See* D.N. 139, PageID # 1096-1103) Read in context, it does not indicate any failure by defense counsel.

6

threw some money at her; and that after they began driving again, Christine continued to follow them until Givhan ran a red light to lose her. (*Id.*, PageID # 2193-94) Givhan's brother also states that Christine and Givhan each contacted him for the other's phone number on multiple occasions, and that Christine contacted him via Facebook asking that he tell Givhan "that she was pregnant and wanted money for an abortion." (*Id.*, PageID # 2194-95)

"[W]hether to call a witness and how to conduct a witness'[s] testimony are classic questions of trial strategy that merit *Strickland* deference." *Rayborn*, 489 F. App'x at 878. Defense counsel's cross-examination of Christine and other government witnesses—including Christine's mother—was designed to support the defense theory that Christine was Givhan's business partner or a free agent as opposed to a victim (*see* D.N. 141, PageID # 1297-1368; D.N. 100, PageID # 576-79), and the defense's closing argument forcefully reiterated those themes. (*See* D.N. 144, PageID # 1840-59) The proposed testimony set forth in the affidavits does not indicate that these arguments would have been more effective if Givhan's son and brother had testified. And as the magistrate judge observed, "[t]he proposed testimony does not refute any elements of" the sex-trafficking statutes. (D.N. 174, PageID # 2257) Because Givhan has not shown that it was objectively unreasonable of defense counsel not to call his son and brother as witnesses or that their testimony would have changed the outcome of the trial, his second objection will be overruled. *See Strickland*, 466 U.S. at 688, 694.

**C.     Objection 3**

In his third objection, Givhan asserts that the magistrate judge "contradict[ed] the record" by stating that "[c]ounsel's questioning made clear to the jury that Christine was arrested for prostitution." (D.N. 184, PageID # 2363 (quoting D.N. 174, PageID # 2259)) This objection likewise fails: defense counsel's cross-examination left no doubt that Christine had

7

independently engaged in prostitution. (*See, e.g.*, D.N. 141, PageID # 1301-03 (establishing that Christine had posted an ad on Backpage and engaged in prostitution by herself in Kalamazoo), 1307-12 (establishing that Christine, Shakela, and a man who was not Givhan traveled to Fort Wayne and were arrested there), 1356 (asking whether, after she "ran from [Givhan]," Christine had "set up [her] own operation," to which she responded, "[y]es, a couple days later"), 1366-68 (questioning and testimony about Christine posting ads on Backpage independently), 1387-88, 1390 (revisiting testimony regarding Kalamazoo and Fort Wayne trips)) And as Givhan acknowledges, counsel repeatedly pressed the Court for permission to explore that topic in more detail, without success. (D.N. 184, PageID # 2363 ("Trial counsel, due to Court Rule 412, was never able to get into what Christine was arrested for . . . . Counsel wanted to get into the severity of the arrest, and show that it [was not] a minor charge.")); *see, e.g.*, D.N. 141, PageID # 1312-17) Despite the Court's restrictions, through careful questioning counsel managed to convey to the jury the nature and severity of the charges Christine faced.[3] Givhan thus fails to demonstrate any error by the magistrate judge or ineffective assistance by his trial counsel on this ground.

**D.      Objection 4**

Givhan next objects to the magistrate judge's "findings and conclusion concerning claim 3." (D.N. 184, PageID E 2363) Specifically, Givhan asserts that his trial counsel failed to investigate whether Christine had lied about Givhan forcing her to have an abortion (*id.*), evidence that Givhan believes his counsel "could have used . . . to show that Christine's credibility was terrible." (*Id.*, PageID # 2364) Yet the motion in limine filed by Givhan's

---

[3] The Sixth Circuit found on appeal that "the additional detail that the district court withheld— that the witnesses' crime of arrest was prostitution—was not relevant to the jury's assessment of the witnesses' bias." *Givhan*, 740 F. App'x at 462.

counsel before trial demonstrates awareness that Christine had changed her story regarding the abortion. (*See* D.N. 57, PageID # 185 ("The report of the interview paraphrases the interview by saying that Givhan required her to have an abortion, but goes on to state that she wanted to have the abortion."))  The motion in limine sought to exclude evidence concerning abortion based on counsel's conclusion that such evidence would be more harmful to Givhan's case than helpful:

> Any reference to an abortion that the alleged victim had, and wanted to have, is irrelevant to any issue to be decided in this trial and would be extremely prejudicial and inflammatory.  Reference to such a hot-button topic as abortion would unduly inflame the jury and cause them to dislike the defendant for reasons that are not pertinent to the matter for which Mr. Givhan is standing trial.  Any reference to the alleged victim's obtaining an abortion is irrelevant to any matter to be determined at this trial and would be unduly prejudicial and must be excluded by FRE 401 and 403.

(*Id.*)  Givhan's contention that his trial counsel failed to investigate Christine's statements is thus refuted by the record, which instead reflects that counsel made a strategic decision to avoid any mention of the highly controversial topic of abortion.  That decision was not objectively unreasonable.  Even if it were, Givhan could show no prejudice because trial counsel attacked Christine's credibility on multiple other points.  (*See* D.N. 141, PageID # 1297-1368, 1382-90)  This objection will therefore be overruled.  *See Strickland*, 466 U.S. at 688, 694.

E.     **Objection 5**

Givhan next objects to the magistrate judge's conclusion that no prejudice resulted from defense counsel's failure to obtain the details of Shakela's prior felony conviction for child abuse in time for use at trial. (D.N. 184, PageID # 2364)  Although Givhan repeatedly refers to defense counsel's "failure to impeach" Shakela (*id.*), the record reflects that defense counsel did in fact impeach Shakela with her felony conviction; counsel merely lacked the documentation of Shakela's guilty plea that would have refuted her testimony that she took the blame for abuse committed by someone else.  (*See* D.N. 142, PageID # 1466-67)  In response to defense

9

counsel's follow-up questions, Shakela admitted that she had pleaded guilty to felony child abuse and that she served prison time, was subject to supervised release, and lost custody of her child as a result. (*Id.*, PageID # 1468-70) In light of these admissions, further testimony concerning the facts underlying Shakela's guilty plea would have added little to assist the jury in weighing her credibility. Moreover, as the magistrate judge noted and Givhan acknowledges, Shakela's testimony was not the sole basis for any conviction; rather, it merely bolstered Christine's testimony. (*See* D.N. 174, PageID # 2260) Because defense counsel did not fail to impeach Shakela and Givhan has not shown "that there is a reasonable probability that . . . the result of the proceeding would have been different" if defense counsel had questioned her about the details of her felony conviction, his fifth objection will be overruled. *Strickland*, 466 U.S. at 694.

**F.      Objection 6**

In his sixth objection, Givhan asserts that the magistrate judge failed "entirely to address his claim that counsel was in[e]ffective for failing to move for a mistrial when prejudic[ial], inflammatory, inadmissible[] evidence was presented to the jury"—specifically, evidence pertaining to "a dismissed count." (D.N. 184, PageID # 2365) In that claim, Givhan pointed to Xia's testimony that he had threatened her family, forced her to have sex, anally raped her, and "put his hands on" her. (D.N. 173, PageID # 2237-40; *see* D.N. 143, PageID # 1652, 1655, 1687, 1731) Because the magistrate judge did not address this claim in the report and recommendation, the Court will sustain Givhan's sixth objection. However, the Court finds that relief on this claim is not warranted under § 2255 for the following reasons.

First, Givhan has not shown that his trial counsel's performance was deficient. Defense counsel argued strenuously to prevent questioning and testimony regarding any alleged force, and as a result the Court instructed the prosecution to avoid "unduly prejudicial

10

testimony . . . that isn't germane to th[e] remaining counts." (D.N. 143, PageID # 1691-92; *see id.*, PageID # 1655-66, 1687-89) The Court also instructed the jury to disregard Xia's reference to anal rape.[4] (D.N. 143, PageID # 1667) Givhan identifies only one instance of purportedly prejudicial testimony following those instructions, namely when Xia testified, "I don't think it was a free ride. I still suffered. This stuff still happened to me. He still put his hands on me. He still forced me to have sex." (D.N. 173, PageID # 2239 (quoting D.N. 143, PageID # 1731)) That statement came in the middle of a cross-examination in which Xia repeatedly acknowledged, in response to pointed questions by defense counsel, that she had lied about most of her interactions with Givhan and received extensive benefits from the government in return for her testimony against him. (*See generally* D.N. 143, PageID # 1714-48) In light of Xia's significantly damaged credibility, this statement, alone or in combination with the two others identified by Givhan, was not so prejudicial that it was objectively unreasonable for defense counsel not to seek a mistrial.

Second, Givhan cannot show prejudice, as there is no indication that the Court would have granted a motion for mistrial at that point in the proceedings. "Prejudice is not shown when, after looking at the transcripts, it is 'difficult to imagine the trial court responding favorably to [a mistrial motion].'" *Delaine*, 605 F. App'x at 472-73 (alteration in original) (quoting *Smith v Withrow*, No. 97-2319, 1999 U.S. App. LEXIS 15178, at *15-*16 (6th Cir. July 6, 1999)). After the testimony about anal rape and threats to Xia's family members, the Court stated, "I don't think anything the jury's heard thus far in her direct testimony is unduly or unfairly prejudicial to the defendant." (*Id.*, PageID # 1691) Nothing in the record suggests that Xia's additional statement that Givhan "still put his hands on [her]" and "forced [her] to have

---

[4] The jury is presumed to have followed the Court's instruction. *See Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987).

sex" would have altered the Court's position. Givhan thus is not entitled to relief on this claim. *See Delaine*, 605 F. App'x at 472-73.

**G.     Objection 7**

In his seventh objection, Givhan asserts that the report and recommendation "fails entirely to address his claim that counsel was in[e]ffective under cumulative error." (D.N. 184, PageID # 2365)  This objection is meritless: the magistrate judge did address cumulative error, correctly concluding that because there was no constitutional violation, there was "no basis for conducting a cumulative error evaluation." (D.N. 174, PageID # 2262 (citing *O'Neal v. McAninch*, 513 U.S. 432, 436-43 (1995); *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993); *United States v. Parker*, 997 F.2d 219, 221-22 (6th Cir. 1993)))

**H.     Objection 8**

Givhan's eighth objection is similar to the sixth, asserting that the magistrate judge failed "to address his claim that counsel was ineffective for failing to object to prejudic[ial], inflammatory and inadmissible evidence." (D.N. 184, PageID # 2365)  Givhan is correct that the report and recommendation did not address this claim, which appeared on pages 43-48 of his § 2255 motion. (D.N. 173, PageID # 2241-46)  The Court will therefore sustain Givhan's eighth objection.  Having reviewed the claim de novo, however, the Court finds no basis for relief under § 2255 for the reasons explained below.

In support of this claim, Givhan cites a handful of instances throughout the trial where defense counsel did not object to testimony that Givhan views as prejudicial: Agent Craig Eid's testimony that Xia told him she was scared Givhan would hurt her family or kill her (*id.*, PageID # 2241 (citing D.N. 142, PageID # 1476)); Xia's testimony that Givhan had threatened her family, forced her to have sex, and threatened to tell her probation officer that she had left the

state and been drinking alcohol (*id.*, PageID # 2242 (citing D.N. 143, PageID # 1652, 1686, 1731)); and Christine's testimony about a physical altercation between Givhan and Dream/Marina (*id.*, PageID # 2242-43 (citing D.N. 141, PageID # 1370))  He also asserts that his counsel should have objected to three remarks in the prosecution's closing argument.  (*Id.*, PageID # 2244-45)

As an initial matter, Givhan can show no prejudice from the prosecutor's remarks because the jury was instructed multiple times that arguments by counsel are not evidence. *See Wilson v. McMacken*, 786 F.2d 216, 219 (6th Cir. 1986) (finding no prejudice from counsel's failure to object to prosecutor's statements in closing argument because court "warned the jury that the arguments are not to be considered evidence").  (*See* D.N. 138, PageID # 1083 (preliminary jury instructions); D.N. 144, PageID # 1800 (final jury instructions))  Nor was counsel deficient in failing to object to those remarks or the testimony identified by Givhan.  A lawyer is not required to "make every colorable objection," *Moody v. United States*, 958 F.3d 485, 492 (6th Cir. 2020) (quoting *Wilson*, 786 F.2d at 219 n.3), and "experienced [defense] counsel learn that object[ing] to each potentially objectionable event could actually act to their [client's] detriment." *Robinson v. United States*, 625 F. App'x 721, 724 (alterations in original) (quoting *Lundgren v. Mitchell*, 440 F.3d 754, 774 (6th Cir. 2006)); *see id.* at 724-25 (observing that because "too-frequent objections quickly annoy both judges and juries—especially when those objections are overruled," experienced trial counsel 'use objections in a tactical manner'" (quoting *Lundgren*, 440 F.3d at 774)).  "Tough judgment calls about what to challenge and what to let slide are part of lawyering.  Such decisions only become deficient—that is, incompetent—when no reasonable counsel would have made the same choice at the time." *Moody*, 958 F.3d at 492 (citing *Strickland*, 466 U.S. at 690).  The instances described by Givhan fall far short of this

standard, particularly since the record reflects that defense counsel attacked the testimony in other ways: each witness was cross-examined extensively, and the defense's opening and closing were designed to undermine the witnesses' credibility. (*See* D.N. 143, PageID # 1714-48; D.N. 142, PageID # 1555-1607; D.N. 141, PageID # 1297-1368, 1382-90) For the same reason, Givhan cannot show that he was prejudiced by counsel's failure to object at the time the testimony was elicited. Relief is therefore not warranted on this claim.

**I.      Objection 9**

Givhan asserts in his ninth objection that the magistrate judge "fail[ed] entirely to address his claim that counsel was ineffective for failing to investigate Christine's CPS case," which he contends "was a major motive for Christine testifying against [him]." (D.N. 184, PageID # 2366) While the specific issue of Child Protective Services was not mentioned in the report and recommendation, the magistrate judge discussed Christine's motive to avoid criminal charges by implicating Givhan, a subject Givhan's trial counsel addressed at length on cross-examination. (*See* D.N. 174, PageID # 2258-59; D.N. 141, PageID # 1309-12, 1317-25) And Givhan's trial counsel questioned Christine regarding the child-custody issue; indeed, it was the second topic raised on cross-examination. (*Id.*, PageID # 1299-1301 (testimony regarding Dream/Marina having reported Christine to CPS and Christine losing custody of her children as a result)) Further, defense counsel connected the dots between Christine's arrest in Fort Wayne and the possibility that it could affect custody of her children, quoting a Fort Wayne police detective's statement to Christine that "you take this advantage, *you get your kids*, you get things lined up, you get a great job, one day you forgot about it. A year down the road you get stopped for something stupid, and the next thing[] you know, there it is, oh, s***." (*Id.*, PageID # 1320 (emphasis added))

14

Givhan's argument thus "amounts to the contention that trial counsel should have pursued the issue more thoroughly." *Jackson v. Bradshaw*, 681 F.3d 753, 765 (6th Cir. 2012). But whether a cross-examination could have been improved is not "the standard of constitutional effectiveness." *Id.* (quoting *Henderson v. Norris*, 118 F.3d 1283, 1287 (8th Cir. 1997)) (rejecting petitioner's argument that trial counsel should have questioned witness more thoroughly about potential bias arising from her romantic relationship with petitioner). Any witness likely has a long list of personal reasons for wanting to avoid criminal prosecution. The fact that Givhan's trial counsel did not explore one specific reason in detail does not mean that his performance was objectively unreasonable. *See id.*; *United States v. Munoz*, 605 F.3d 359, 381 (6th Cir. 2010) ("That [trial counsel] did not spot, or did not choose to emphasize, *every* basis for undermining the rehabilitation of [a witness] does not render his re-cross constitutionally ineffective."). This objection will therefore be overruled.

**J.      Objection 10**

Givhan's final objection states simply that he "objects to [the] findings and conclusions of law on claim 1 as being based on incorrect findings of fact resulting in an incorrect conclusion of law." (D.N. 184, PageID # 2366)  Because Givhan does not specify the basis for this objection, it amounts to a failure to object. *See Martin v. LaBelle*, 7 F. App'x 492, 494 (6th Cir. 2001) (finding no error in district court's conclusion that objections to report and recommendation that "were summary in nature, providing general legal standards and conclusory statements that plaintiffs met those standards or that the magistrate judge erred in his recommendations," were equivalent to failure to object). In any event, the Court considered claim 1 in part II.A above and found no error in the magistrate judge's conclusion. Givhan's final objection will therefore also be overruled.

15

## III.

Although the Court will sustain two of Givhan's objections based on the magistrate judge's failure to address certain claims, Givhan has not shown that he is entitled to relief under § 2255 on any claim. Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) Givhan's sixth and eighth objections to the Findings of Fact, Conclusions of Law, and Recommendation (D.N. 184) are **SUSTAINED**. All of Givhan's remaining objections are **OVERRULED**.

(2) The Findings of Fact, Conclusions of Law, and Recommendation of Magistrate Judge H. Brent Brennenstuhl (D.N. 174) are **ADOPTED** in full and **INCORPORATED** by reference herein.

(3) A separate judgment will be entered this date.

January 12, 2022

David J. Hale, Judge
United States District Court